UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NEIL V. D'LIMA, D.D.S.,

                              Plaintiff,

        v.                                                  **DECISION AND ORDER**
                                                            09-CV-00608S

CUBA MEMORIAL HOSPITAL, INC. and
ANDREW H. BOSER, III., individually and as Chief
Executive Officer of Cuba Memorial Hospital, Inc.,

                              Defendants.

## I. INTRODUCTION

Plaintiff Neil v. D'Lima, D.D.S. ("Plaintiff") commenced this employment

discrimination action by filing a Complaint in the United States District Court for the

Western District of New York.  (Docket No. 1.)  Plaintiff subsequently filed an Amended

Complaint in which he alleges that Defendants, Cuba Memorial Hospital, Inc. ("CMH" or

the "Hospital") and its CEO Andrew H. Boser, III ("Boser"), discriminated against Plaintiff

on the basis of his race, color, and/or national origin (Indian), violated the New York State

Human Rights Law, N.Y. Exec. L. §§ 290 et seq. (hereinafter, "NYHRL"), violated the

Americans with Disabilities Act, 42 U.S.C. §§ 12112 et seq. ("ADA"), committed slander per

se, and intentionally inflicted emotional distress upon him.   Plaintiff further alleges, that

CMH also violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

(hereinafter, "Title VII").

Defendants now move to dismiss the ADA and common law claims as to the

Hospital, and all claims alleged against Boser pursuant to Federal Rule of Civil Procedure

1

12(b)(6).[1]   Plaintiff opposes this motion.[2]   For the reasons stated below, Defendants'
motion is granted in part and denied in part.

## II.  BACKGROUND

### A.    Facts

CMH is a non-profit health care provider headquartered at 140 West Main Street,
Cuba, New York.  (Amended Compl. ¶ 11.)  Boser served as CMH's Chief Executive
Officer during the relevant time period.  (Id. ¶ 13.)

Plaintiff was referred to CMH for employment by the National Health Service Corps,
a government agency that places medical personnel in geographical areas where there is
a need for such personnel.  (Id. ¶ 16.)  CMH is located in an area designated as a "Health
Professional Shortage Area" by the United States Department of Health and Human
Services.  (Id. ¶ 15.)  Plaintiff was employed by CMH as a dentist from January 22, 2007
until his suspension on August 5, 2008.  (Id. ¶ 9; See Compl.[3], Ex. B, NYSDHR Report.)

Plaintiff is of Indian descent.  (Amended Compl. ¶ 10.)  Throughout the course of
his employment, he was treated differently than his Caucasian peers, especially by Boser,
who criticized him for projecting a "negative image" to the community and dating a
Caucasian female.  (Id. ¶ 26.)  Boser also advised Plaintiff to be careful with whom he

---

[1]In support of its Motion, Defendants filed an Affidavit of Sharon A. Swift, Esq.; Memorandum of Law; and Reply Memorandum of Law.

[2]In opposition, Plaintiff filed an Affidavit of Jennifer A. Mereau, Esq., with Exhibits and Memorandum of Law.

[3]Plaintiff did not attach certain documents to his Amended Complaint which were attached to his original Complaint.  Defendants do not object to Plaintiff's failure to attach these documents and even reference them in their memoranda.  Thus, the Court will consider these documents as if they were attached to the Amended Complaint.

socialized and at what locations.  (Id.)

On or about July 2008, Boser secured the assistance of dental hygienist Jacie Glover ("Glover") to spread rumors to CMH employees, patients, and the community at large that Plaintiff regularly used illegal drugs on weekends and was impaired by these drugs while on duty at CMH, causing a detrimental impact on patient care.  (Id. ¶ 29.)

At some point during Plaintiff's employment, Defendants became aware that the Hospital's Patient Advocate's office had received two complaints regarding the quality of dental service rendered by Plaintiff.  (Compl., Ex. B, NYSDHR Report.)  One for extracting the wrong tooth, and one for lack of complete treatment.  (Id.; Compl., Ex.I.)

Plaintiff was suspended on August 5, 2008, with pay, for violations of the Hospital's policies and procedures.  (Compl., Ex. F, Suspension Letter; Compl., Ex. K.)  Plaintiff was told by Boser he was being suspended because of "patient complaints."  (Compl., Ex. B, NYSDHR Report.)  He was given a drug test and escorted off CMH premises.  (Amended Compl., ¶ 30.)  Defendants failed to provide Plaintiff with the negative drug test result until August 11, 2008, several days after they were returned.  (Id. ¶ 31.)  The drug test results were given to an employee who was not authorized to have them.  (Id. ¶ 32.)

Plaintiff was informed he could return to work with certain conditions, including supervision by another doctor.  (Compl., Ex. B, NYSDHR Report.)  Plaintiff decided not to return to work because of irreparable damage to his reputation and standing in the community.  (Id.; Amended Compl., ¶ 37.)

**B.    Procedural History**

On September 26, 2008, Plaintiff dually filed a charge of discrimination on the basis of color, national origin, and race, and retaliation with the New York State Division of

Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). (Compl., Ex. A.)  After investigation, the NYSDHR determined that probable cause existed to believe Defendants engaged in or were engaging in the unlawful discriminatory practices complained of.  (Compl., Ex. B.)  A Notice of Right to Sue was issued on March 31, 2009. (Compl., Ex. C; Amended Compl., Ex. A.)  The case was dismissed for administrative convenience so that Plaintiff could pursue his remedies in federal court.  (Compl., Ex. D.)

On June 30, 2009, Plaintiff commenced this action by filing a Complaint with the Clerk of this Court.  (Docket No. 1.)  On September 14, 2009, Defendants filed a Motion to Dismiss.  (Docket No. 4.) In response, on January 7, 2010, Plaintiff filed an Amended Complaint and Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (Docket Nos. 12, 13.)  Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint on August 10, 2009.  (Docket No. 16.)

### III.  DISCUSSION AND ANALYSIS

#### A.     Rule 12(b)(6)

Defendants argue that Plaintiff's ADA claim, NYHRL claim against Boser, and his claims under New York common law for slander *per se* and intentional infliction of emotional distress should be dismissed under Rule 12(b)(6).

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent.  Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167

L. Ed. 2d 929 (2007) (internal quotation marks and alteration omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  See Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).   However, legal conclusions are not afforded the same presumption of truthfulness.  See Iqbal, ___ U.S. ___, 129 S.Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

The Court's responsibility on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2nd Cir. 1985).  A court shall grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 335 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  In reaching its determination, a court's review must be limited to the complaint and documents attached or incorporated by reference thereto.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

**B.     Application**

      **1.     Plaintiff's ADA Claim**

            **a.     Against Boser**

Defendants argue that Plaintiff's ADA claim against Boser must be dismissed as a matter of law.  (Defs.' Memo., p. 4.)

The Second Circuit has held that individual defendants cannot be held liable under

the ADA.  Garcia v. S.U.N.Y. Health Sciences Cntr., 280 F.3d 98 (2nd Cir. 2001).  Thus, Plaintiff's ADA claim as against Boser is dismissed.

### b.    Against CMH

Defendants further argue that Plaintiff's ADA claim against CMH must be dismissed as a matter of law because Plaintiff has failed to exhaust his administrative remedies. (Defs.' Memo., p. 3.)

In order to file an ADA claim in federal court, a plaintiff must first exhaust his administrative remedies by filing a timely charge with the EEOC.  Arati v. Genessee Cnty. Sheriff's Office, No. 00-CV-0163, 2000 WL 1047701, at * 1 (W.D.N.Y. July 25, 2000). Exhaustion is not a jurisdictional prerequisite, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.  Zipes v. Trans World Airlines, Inc., 445 U.S. 385, 393 (1982).

Generally, if a claimant fails to pursue a given claim in the administrative proceedings, the federal court lacks jurisdiction to adjudicate the claim.  Fitzgerald v. Henderson, 251 F.3d 345, 359 (2nd Cir. 2001) (citing cases).  However, the court has jurisdiction over a claim not expressly pursued before the administrative agency if that claim is "reasonably related" to those the plaintiff did assert before the agency.  Id.  One way a claim is considered "reasonably related" is if the conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge" that was made.  Butts v. City of New York Dep't. of Housing Pres. & Dev., 990 F.2d 1397, 1402 (2nd Cir. 1993) (citing cases).

CMH contends that Plaintiff did not allege an ADA violation in his complaint to the NYSDHR.  (Defs.' Memo., pp. 5-6.)  It argues that Plaintiff stated twice in his charge that

the "basis" for his employment discrimination was that he believed he was being discriminated against because of his "color, national origin, race, and retaliation."  (Id.) Plaintiff did not indicate that he had been discriminated against because of a disability or perceived disability.  (Id. p. 6.)  In addition, Defendants argue Plaintiff's purported ADA claim was not within the scope of investigation actually undertaken by the NYSDHR.  (Id.)

Plaintiff argues that although he did not check the box for disability discrimination on the NYSDHR complaint, he did reference his claim that Defendants improperly released confidential information in violation of the ADA.[4]  (Pl.'s Memo., p. 4.)  For instance, in his attachment to the charge, Plaintiff wrote that Defendants

> "disseminated. . . rumors. . . that [he] used illicit drugs and was regularly impaired by illicit drugs while working as a dentist at Cuba Memorial Hospital; and that [he] performed poor dental work on two (2) patients because he was impaired. . . [Defendants] then disseminated false information and rumors that [he] had tested positive for cocaine use. . ."

(Id. pp. 5-6.)  Furthermore, Plaintiff argues that, after their investigation, the NYSDHR found there were "questions concerning the competence of an investigation into complainant's alleged drug use as well as whether the charges of professional misconduct were a pretext for the discharge of complainant."  (Id. p. 5.)

Although Plaintiff alleges in his charge that certain hospital employees disseminated "false and vicious rumors" of illicit drug use, he did not allege that CHM improperly handled or disclosed confidential medical records.  Plaintiff's conclusion that CMH engaged in "gregarious violations" of "HIPPA" is likewise predicated on the alleged "false and vicious

---

[4] 42 U.S.C. § 12112(d)(1) prohibits discrimination on the basis of disability, including medical examinations and inquiries.

7

rumors," and not on the disclosure of confidential records.  This is not sufficient to give the administrative agency notice and there is nothing in the determination to suggest otherwise.  See Aratari, 2000 WL 1047701, at *1 (ADA claim not "reasonably related" to Title VII claim where the closest plaintiff came to alleging disability on  his EEOC complaint was asserting that, "[a]lthough I was not in good physical condition, Respondent forced me to take the test before I was ready"); Herzog v. McLane Northeast, Inc., 999 F.Supp.244, 276 (N.D.N.Y. 1998) (Plaintiff's gender alone not sufficient notice to EEOC that he was asserting gender discrimination); McNealy v. New York Public Library, No. 96-CV-3023, 1997 WL 607548, at *3 (S.D.N.Y. Oct. 1, 1997) ("no reason to expect that reasonable EEOC investigations into garden variety race claims will result in the addition of age discrimination as a matter of course").

Because the ADA claim is not "reasonably related" to the properly charged Title VII claims, Plaintiff's ADA claim will be dismissed as against CMH.

### 2.    Plaintiff's Claim for Slander *Per Se*

Plaintiff alleges Defendants committed slander *per se* when they verbally communicated with third parties about alleged illegal drug use and malpractice, and prematurely suspended him.  (Amended Compl., ¶ 54.)  Specifically, Plaintiff alleges that Boser secured the assistance of Glover to spread rumors that Plaintiff used illegal drugs and that his impairment from the drugs was having a detrimental impact on his patients, to Hospital staff, patients, and the community at large.  (Id. ¶29.)  In addition, Boser and Clinical Services Director Norma Kerling told Plaintiff he was suspended for illegal drug use and malpractice.  (Id. ¶ 35.)

8

To state a claim for defamation under New York law, a plaintiff must show: (1) that defendants made a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statements concerned the plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was slander *per se* or caused special damages.  Baez v. Jetblue Airways, 745 F.Supp.2d 214, 225 (E.D.N.Y. 2010) (citing Albert v. Loksen, 239 F.3d 256, 265 (2nd Cir. 2001)).

Slander *per se* includes four categories of statements: (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman.  Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992).

Defendants argue that Plaintiff's slander *per se* claim must be dismissed because it fails to state a claim under New York common law.  (Defs.' Memo., p. 3.)  They contend that Plaintiff does not plead facts specific enough to support a claim of defamation, but rather only makes conclusory statements.  (Defs.' Reply, p. 7.)

All that is required in federal court is a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 12(b)(6).  The Court is not bound by the particularity of New York State rules of pleading.  Pierre v. Printing Developments, Inc., 432 F.Supp. 840, 843 (S.D.N.Y. 1977).  Thus, the Court finds the alleged statements, if true, would be considered slander *per se*, because they all charge a serious crime (N.Y. Penal Law § 220, et. al) and tend to injure a dentist's profession. Plaintiff has given fair notice of the claim asserted with sufficient particularity, so as to enable Defendants to answer and prepare for trial.  Thus, the Amended Complaint

sufficiently alleged a cause of action for slander *per se* under the federal rules of pleading.

### a.   Statements from Boser to Kerling

Additionally, Defendants argue that the alleged statements of Boser to Clinical Services Director Norma Kerling do not give rise to liability because their communication is covered by a conditional or qualified privilege. (Defs.' Memo., p. 7.) Defendants contend that both are employees who maintain a common interest in making sure hospital employees carry out their job responsibilities; thus, their communications should be protected. (Id.) And, that Plaintiff cannot prove malice to overcome this privilege. (Id. pp. 7-8.) Plaintiff argues that the "common interest" privilege is an affirmative defense, which must be plead in the Answer to give notice of the defense and to allow the opposing party to develop evidence and offer arguments. (Pl.'s Memo., p. 8.)

New York permits a defense of qualified privilege against an otherwise meritorious claim of slander, where "a communication [is] made by a person with an interest or duty to make the communication and [it is] sent to a person with a corresponding interest or duty." Weldy v. Piedmont Airlines, Inc., 99 F.2d 57 (C.A.2 1993) (citing cases). As CMH's CEO, Boser had a duty to investigate the health and safety of CMH's employees and patients, and to discuss concerns with the Clinical Services Director; and, the Director had an interest in Plaintiff's job performance and reason for termination. Given the mutuality of interest in the subject matter of the alleged statement, a qualified privilege exists. Plaintiff has not alleged malice. Thus, to the extent Plaintiff's claim for slander *per se* pertains to statements made by Boser to Kerling, those communications, even if slanderous, are protected by a qualified privilege.

10

### b.      Statements from Boser to Glover

That same privilege does not exist as to statements Boser made to Glover.  Glover does not hold an administrative position at CMH and does not have a similar interest or job responsibility to investigate the health and safety of CMH employees and patients.  Rather, Glover is a dental hygienist.  (Amended Compl. ¶ 29.)

Accordingly, Defendants' motion to dismiss as to Plaintiff's slander *per se* claim regarding statements Boser made to Glover is denied.

### c.      Statements from Glover to the Community

Next, Defendants argue they cannot be held liable for alleged statements of Plaintiff's co-worker, Glover.  (Defs.' Memo., p. 8.)  Defendants contend that nothing in the Amended Complaint indicates that Glover was acting in the course of performance of her duties as a dental hygienist when she allegedly told others Plaintiff used illegal drugs and committed malpractice.  (Id.)  Plaintiff does not respond to this argument.

The statements Glover made are false defamatory statements of fact about Plaintiff, published to a third party, that tend to injure Plaintiff's trade or profession.

"Under New York law, an employer can be held vicariously liable for a defamatory statement made by one of its employees, but only if the employee made the statement in the course of performance of her duties.  Perks v. Town of Huntington, 251 F.Supp.2d 1143, 1166 (E.D.N.Y. 2003).  New York courts have pointed out several key inquiries to decide whether at a particular moment an employee is engaged in the employer's business, including:

> (1) did the employee's acts fall within the direction and control of the employer; (2) did the employee act under the express or

11

> implied authority of the employer, (3) was the employee's act in furtherance of the employer's interests; (4) were the employee's acts in the "discharge of duty" to the employer; (5) was it an act in the execution of employer's orders or part of the work assigned by the employer; and (6) were the acts "so closely connected" with what the employee was hired to do, and "so fairly and reasonably incidental to it that they may be regarded as methods, even though quite improper ones, of carrying out the objects of the employment".

Rausman v. Baugh, 248 A.D.2d 8, 682 N.Y.2d 42, 43-44 (2nd Dept. 1998) (citing cases).

In the case before us, Plaintiff alleges Glover was instructed by Boser, the CEO of the Hospital, to spread the "false and vicious rumors" regarding Plaintiff.  Taking Plaintiff's allegation as true, Glover acted under the express authority of the employer and was executing the employer's orders.  Contra Rausman v. Baugh, 248 A.D.2d 8, 13, 682 N.Y.S.2d 42 (2nd Dept. 1998) (defendants were not held vicariously liable for statements made by employee where "[s]he was free to make the accusations or not; she was under no orders to make the accusation").  Thus, Defendants can be held vicariously liable for the defamatory statements by Glover.

Defendants' motion is denied as to Plaintiff's slander *per se* claim regarding alleged statements of Glover.

### d.    Suspension of Plaintiff

Lastly, Defendants argue the act of suspending someone cannot be considered slander *per se*.  (Def.'s Memo., pp. 8-9.)  Plaintiff does not respond to this argument.  The Court agrees that the act of suspending someone is not a "statement" and thus cannot be considered slander *per se*.

### 3.    Plaintiff's Claim for Intentional Infliction of Emotional Distress

12

Defendants argue Plaintiff's intentional infliction of emotional distress claim must be dismissed because it fails to state a claim under New York common law.  (Defs.' Memo., p. 3.)

To establish a *prima facie* case of intentional infliction of emotional distress under New York Law, a plaintiff must prove the following elements:

   (1)   extreme and outrageous conduct;
   (2)   intent to cause, or reckless disregard of a substantial
         probability of causing severe emotional distress;
   (3)   causal connection between the conduct and injury; and
   (4)   severe emotional distress.

Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121, 612 N.E.2d 699 (1993)); see also Walker v. New York City Transit Auth., No. 99 CIV. 3337(DC), 2001 WL 1098022 (S.D.N.Y. Sept. 19, 2001). Liability can be found only where the conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Howell, 81 N.Y.2d at 122; see also Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 58 N.Y.2d 293 (1983).  The New York Court of Appeals has rarely allowed a plaintiff to sustain a claim for intentional infliction of emotional distress in an employment discrimination case.  Ahmed, 2000 WL 1072299, at *10.  In addition, "[d]efamatory statements are generally not sufficiently extreme and outrageous to support an [intentional infliction of emotional distress] claim." Carlson v. Geneva City School Dist., 679 F.Supp.2d 335, 372 (W.D.N.Y. 2010).

Defendants contend that Plaintiff's assertion that he had no choice but to quit his position does not show that Defendants, by extreme and outrageous conduct, caused severe emotional distress.  (Defs.' Memo., p. 9.)  Plaintiff argues Defendants willfully and

13

maliciously inflicted behavior on Plaintiff, which caused serious emotional and physical injuries and made him unable to return to work.  (Pl.'s Memo., p. 9.)

Indeed, Plaintiff does not point to any conduct of Defendants' that is so extreme as to go beyond all bounds of decency.  New York courts have made clear that Plaintiff's allegations do not satisfy the rigorous standard, holding that conduct that forms the basis of a cause of action for intentional infliction of emotional distress must consist of more than "mere insults, indignities and annoyances." Leibowitz v. Bank Leumi Trust Co., 152 A.D.2d 169, 182, 548 N.Y.S.2d 513 (2nd Dept. 1989) (quoting Nestlerode v. Federal Ins. Co., 66 A.D.2d 504, 507, 414 N.Y.S.2d 398 (4th Dept. 1979), *appeal denied*, 48 N.Y.2d 604, 421 N.Y.S.2d 1029, 396 N.E.2d 487 (1979)); see, i.e, La Duke v. Lyons, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3rd Dept. 1998) (no intentional infliction of emotional distress where plaintiff nurse terminated from her employment at a hospital after being accused by co-workers of euthanizing a patient); Carlson, 679 F.Supp.2d at 373 (no intentional infliction of emotional distress where supervisors allegedly harassed plaintiff and conducted an investigation into whether she had sex with students and sold them drugs).

Defendants' motion to dismiss as to Plaintiff's intentional infliction of emotional distress claim is granted.

### 4.    Remaining Claims against Boser

Defendants argue Plaintiff failed to establish that Boser may be held individually liable under the NYHRL.  (Defs.' Memo., p. 11.)

Defendants do not cite any case law or factual support for their argument.  The NYHRL is cognizable against an individual, such as Boser, who is alleged to have

participated in discrimination.  See N.Y. Exec. Law § 296.  Plaintiff plead his NYHRL claim with enough particularity to satisfy the federal rules of pleading.  See Fed. R. Civ. P. 8(a)(2).  Thus, Plaintiff's claim against Boser for violations of the NYHRL will not be dismissed.

Defendants further argue that the Court should decline to exercise jurisdiction over Boser because the federal claim against him is dismissed.  (Defs.' Memo., p. 11.)  Plaintiff argues the Court should exercise supplemental jurisdiction over Plaintiff's state law claims, which arose out of the same transactions and occurrences as the federal claims.  (Pl.'s Memo., p. 10.)

In cases where a district court has original jurisdiction, it may also exercise "supplemental jurisdiction over all claims that are so related to claims in an action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  A state law and federal claim form the same case or controversy where they "derive from a common nucleus of operative fact;" or other words, must be such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996).

The Court sees no reason for declining to exercise supplemental jurisdiction over the remaining claims against Boser.  As set out in the Amended Complaint, Plaintiff's Title VII claim against CMH, his slander *per se* claims against Boser, and NYHRL claim against both all stem from the same facts and alleged conduct of the Defendants.  Thus, the claims should be tried all in one judicial proceeding.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted as to the ADA and intentional infliction of emotional distress claims, and the claim for slander *per se* in so much as it pertains to statements made by Boser to Kerling, and denied in all other respects.

**V.  ORDERS**

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 16) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated:  June 12, 2011
           Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court